United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| David Arnold Gray, Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-23693-Civ-Scola |
| | ) | |
| Ronald Howard and others, Defendants. | ) ) | |

### Omnibus Order Granting Motion to Dismiss and Denying Motion for Leave to Amend

Plaintiff David Arnold Gray, proceeding pro se, complains the Defendants—Miami-Dade County and various individuals who are Miami-Dade County officials or employees—violated his rights, associated with his employment with the County's Solid Waste Department as a "Trash Truck Driver 1." (Corr. Am. Compl., ECF No. 1 ("Compl.").) Previously, the Court stuck Gray's initial complaint, as a shotgun pleading. (Order, ECF No. 15.) Gray has since filed a corrected amended complaint setting forth three counts, under 42 U.S.C. § 1983, all alleged to arise out of the deprivation of Gray's procedural due-process rights under the Fourteenth Amendment: <u>count one</u> is lodged against all the Defendants; <u>count two</u> is lodged against only two of the County employees, and is captioned a "willful deprivation of rights under color of law, ordinance, or regulation"; and <u>count three</u> is lodged against three other County employees for "conspiracy against rights under color of law, ordinance, or regulation." (*Id.*) In response, the Defendants have filed a motion to dismiss, arguing (1) Gray fails to state a plausible procedural due-process claim under § 1983; (2) Gray fails to allege a plausible claim of an unconstitutional deprivation of a property interest; (3) conspiracy claims are unavailable against the County and County employees; (4) Gray has state remedies available; (5) punitive damages are unavailable against the County; and (6) the individual Defendants are shielded from liability by qualified immunity. (Defs.' Mot., ECF No. 18). Gray opposes the motion (Pl.'s Resp., ECF No. 19), to which the Defendants have replied (Defs.' Reply, ECF No. 20). After the conclusion of the briefing of the Defendants' motion to dismiss, Gray filed a motion for leave to amend his complaint (Pl.'s Mot., ECF No. 24), which the Defendants opposed (Defs.' Resp., ECF No. 25). After review, the Court **grants** the Defendants' motion to dismiss the corrected amended complaint (**ECF No. 18**) and **denies** Gray's motion for leave to amend (**ECF No. 24**).

### 1. Background[1]

The bases of Gray's grievances are not altogether clear but it appears his difficulties began in January 2022, while he was employed as a "Trash Truck Driver 1" for the Department of Solid Waste Management for Miami-Dade County. (Compl. ¶¶ 11, 14.) In the morning of January 25, Gray attempted to fuel his assigned County "roll-off vehicle" at County "fuel site #17." (*Id.* ¶ 36.) Defendant Alfred Coleman, a "Waste Supervisor 2" for the Department, however, informed Gray that he would be written up if he got fuel there. (*Id.* ¶¶ 10, 14.) The next day, Gray asked Coleman for a copy of the Standard Operating Procedures for the Trash Division. (*Id.* ¶ 15.) In response, Coleman told Gray that he had "the rule book in [his] head" and advised Gray he could ask Coleman anything about Gray's job responsibilities. (*Id.*) Coleman also told Gray that Coleman could tell him where he could get a copy of his job description. (*Id.*)

This interaction appears to have prompted Gray, a few days later, to submit a "career service grievance" to Defendant Ronald Howard, the Division Chief 3 for the Department. (*Id.* ¶¶ 9, 16.) According to Gray, Coleman's failure to provide Gray with the operating procedures violated a County regulation that specifies that "copies of policies and work rules should be made available to employees and employees should know where to locate them." (*Id.* ¶ 16 (cleaned up).)

The following week, on February 1, Howard directed another Department employee to escort Gray from his assigned work location in Homestead to Doral for a meeting. (*Id.* ¶ 17.) During that meeting, Howard told Gray that he did not have the requested standard operating procedures but that Howard could prepare "something like a cheat sheet" for Gray. (*Id.*) A week later, Gray escalated his career service grievance to Defendant Sherra Durham-Camp, the Assistant Director for the Department, complaining that Howard violated a County regulation requiring a written response to an employee's grievance within seven days. (*Id.* ¶¶ 8, 18.)

Apparently in response to that email, Durham-Camp, on February 11, then had another Department employee escort Gray, once again, from Homestead to Doral, for a meeting about Gray's grievances with Durham-Camp, Howard, and Coleman. (*Id.* ¶ 19.) During that meeting, Durham-Camp presented Gray with a cheat sheet—a single page with thirteen bullet points of what Gray describes as "ambiguous information." (*Id.*) Gray rejected the document because, he says, "it lacked official presentation." (*Id.*)

---

[1] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

A few days later Gray once again escalated his grievance, this time to Defendant Michael Fernandez, the Director for the Department, seeking redress for Durham-Camp's violation of a County regulation that requires a division director to respond to an employee grievance in writing, within seven days. (*Id.* ¶¶ 6, 20.) A week later, on February 22, Fernandez denied Gray's grievance, by way of a letter, while also providing answers to a number of Gray's inquiries. (*Id.* ¶ 21.) Still not satisfied, Gray emailed Tyrone Williams, the Division Director of Labor Relations for the County's Department of Human Resources, seeking an appeal hearing. (*Id.* ¶¶ 7, 22.) According to Gray, Fernandez violated a County regulation requiring a department director to meet with an employee who has submitted a written grievance and to thereafter provide a written response within seven days of receiving the grievance. (*Id.* ¶ 22.) A month later, Williams sent Gray a letter, denying his request for an appeal hearing. (*Id.* ¶ 23.)

Unhappy with that denial, Gray emailed Deputy Mayor Jimmy Morales, complaining that he was "being retaliated against by supervisors for exercising [his] rights to petition for redress and now [his] workplace is a hostile environment." (*Id.* ¶ 24.) A month later Gray emailed Mayor Daniella Levine Cava, complaining of workplace harassment and demanding a meeting with her so that he could "explain everything from A to Z." (*Id.* ¶ 25.) Over a month after that, Gray emailed the Mayor again, threatening court action unless she disciplined the trash-division employees for their "Jim Crow practices" and "willful acts of negligence and conduct unbecoming." (*Id.* ¶ 26.) Months later, Gray initiated this lawsuit, seeking nearly $2 million in damages and injunctive relief. (*Id.* ¶¶ 1–2.)

## 2. Legal Standard

A court considering a motion to dismiss, filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

### A. Gray fails to state a claim against any of the Defendants.

The Defendants argue that Gray has failed to state a plausible procedural due-process claim under § 1983. Gray's opposition to the Defendants' motion is largely non-responsive and difficult to parse. After review, the Court finds the Defendants' position well taken and unrebutted by Gray.

"In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006). Gray's allegations do not make it past the first element and so the Court declines to evaluate the other two.

As to this first element, the Court "must consider whether the [plaintiff has] shown not only a constitutionally-protected property interest, but also a governmental deprivation of that constitutionally-protected property interest." *Id.* at 1348. For purposes of procedural due-process claims, "[p]roperty interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." *Id.* And "[s]tate law defines the parameters of a plaintiff's property interest for section 1983 purposes." *Pete's Towing Co. v. City of Tampa, Fla.*, 648 F. Supp. 2d 1276, 1288 (M.D. Fla. 2009), *aff'd*, 378 F. App'x 917 (11th Cir. 2010). Gray's claims all fail because he has not alleged any facts supporting an inference that he has a constitutionally-protected property interest in any of the actions that he says the Defendants either prevented him from taking or failed to take themselves.

Gray appears to rely on a handful of County regulations that govern various, routine aspects of the County's relationship with its employees. For example, one regulation Gray cites to provides that "copies of policies and work rules should be made available to employees." (Compl. ¶ 16 (cleaned up).) Others require certain supervisors to "respond to the employee in writing within seven calendar days from the date the written grievance was received." (*Id.* ¶¶ 18, 20, 22.) And another requires a department director to meet with an employee who has submitted a written grievance. (*Id.* ¶ 22.) Gray then claims, without elaboration, that he has "a procedural entitlement" to (1) fuel his truck at site #17 (*e.g., id.* ¶ 36); (2) receive redress in response to his petitions to Howard, Durham-Camp, and Fernandez regarding his various grievances (*e.g., id.* ¶¶ 37–39, 46, 50); (3) obtain an appeal hearing in response to his petition to Williams (*id.* ¶¶ 23, 40, 47); and (4) procure "due process and equal protection" in response to his emails to the Deputy Mayor and the Mayor (*id.* ¶¶41–43.) These largely conclusory allegations fall far short of even implying a property interest

established by state law, never mind establishing a constitutionally-protected property interest. Without more, Gray's interest in fueling his truck at site #17, having a workplace grievance resolved in his favor, being granted an appeal hearing, and receiving a positive response to the emails he sent to the deputy mayor and mayor do not rise to the level of constitutionally protected property interests.

Based on Gray's failure to set forth remotely plausible allegations supporting his due-process claims, he cannot come even close to overcoming the individual Defendants' claims to qualified immunity. Gray does not dispute the individual Defendants' position that, based on Gray's allegations, they were all acting with their discretionary authority. Accordingly, the burden falls to back to Gray to show that the Defendants violated Gray's "clearly established" constitutional rights of which a reasonable person would have been aware based on the state of the law at the time of the official's conduct. *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002). "This burden is not easily discharged: That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (cleaned up). Gray falls far short of establishing any constitutional violations, never mind any that are clearly established.

Similarly, Gray widely misses the mark in trying to establish the County's liability. "Ordinarily, a county may only be sued under section 1983 when a plaintiff's injuries are caused by an official policy of the county." *Gaviria v. Guerra*, 17-23490-CIV, 2018 WL 1876124, at *5 (S.D. Fla. Apr. 19, 2018) (Altonaga, J.) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). That is, municipalities and other local-government entities are subject to liability under § 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id.* at 694; *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987); *see also Farred v. Hicks*, 915 F.2d 1530, 1532–33 (11th Cir. 1990) ("Governmental entities may be held liable under section 1983 when a governmental 'policy or custom' is the 'moving force' behind the constitutional deprivation.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Gray fails to identify any unconstitutional County policy whatsoever that resulted in a constitutional injury. Accordingly, any claim against the County also necessarily fails.

With no viable claim against any of the Defendants, Gray's corrected first amended complaint is subject to dismissal.[2]

### B. Granting Gray leave to file a second amended complaint would be futile.

After the Defendants' motion to dismiss had been fully briefed, Gray moved for leave to file a second amended complaint. (Pl.'s Mot. to Amend, ECF No. 24.) In his proposed second amended complaint, Gray drops counts two and three, reduces the pages of his complaint by half, and exponentially escalates his request for damages to over $10 million. (Proposed 2nd Am. Compl., ECF No. 24-1.) Once again, however, the complaint suffers from a surplusage of conclusory allegations and a dearth of concrete or meaningful factual allegations. For example, Gray complains that Howard, Durham-Camp, and Fernandez all "used verbal intimidation and bullying to violate Plaintiff's rights to inspect departmental [standard operating procedures]." (*Id.* ¶¶ 14–16.) Similarly, Gray says Williams unilaterally "denied Plaintiff's rights to a grievance appeal hearing before a three . . . person grievance appeal panel." (*Id.* ¶ 17.) These cursory allegations are all left unbuttressed by any supporting facts. Elsewhere, in the proposed pleading, Gray recounts facts that are untethered to a viable cause of action. For instance, he says that in response to his "request to inspect and copy the Standard Operating Procedures," "Coleman stated the rule book is in my head and you can ask me anything you want to know about your job." (*Id.* ¶ 12.) In short, none of these allegations remedies the defects the Court identified when it struck Gray's initial complaint nor do they cure the shortcomings the Defendants identify in their motion to dismiss. In other words, even affording Gray the leniency the Court affords litigants proceeding pro se, Gray's proposed pleading would still be subject to dismissal, rendering the amendment futile.

### 4. Conclusion

For the reasons set forth above, the Court **grants** the Defendants' motion to dismiss (**ECF No. 18**) because Gray has failed to state a claim and **denies** Gray's motion for leave to amend his complaint (**ECF No. 24**) because the amendment would be futile. The Court's dismissal of Gray's complaint is **with prejudice** because (1) it is on the merits, (2) Gray has repeatedly failed to fix the substantive and procedural deficiencies in his pleading, identified by both the Court and the Defendants, and (3) any further amendment appears futile. *See Gendron v. Connelly*, 22-13865, 2023 WL 3376577, at *2 (11th Cir. May 11,

---

[2] Based on the deficiencies outlined above, the Court declines to evaluate the additional issues the Defendants identify as warranting dismissal.

2023) (recognizing that "a *pro se* plaintiff must generally be given *one* chance to amend the complaint before the district court dismisses the action with prejudice").

The Court directs the Clerk to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on July 6, 2023.

_____
Robert N. Scola, Jr.
United States District Judge